IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KATHY S. ROSSELL, | : | C.A. No.: 05 - 195 |
| Plaintiff, | : | |
| v. | : | COMPLAINT |
| | : | (Jury Trial Requested) |
| COUNTY BANK, a Banking Institution of the State of Delaware. | : | |
| Defendant. | : | |

1. Plaintiff (Rossell) is and was at all times relevant to this Complaint, a resident of the State of Delaware.

2. Defendant (Bank) is and was at all times relevant to this Complaint, a banking institution doing business in Delaware with its main business location in Sussex County, Delaware.

3. Rossell was employed by Defendant between early 2000 and January 13, 2004, and held the position of supervisor at the Laurel branch of defendant Bank when her employment with Bank was terminated by Bank on or about January 13, 2004.

4. Plaintiff is a white female, 46 years of age.

5. Plaintiff asserts that the actions of Defendant, its agents and employees, as set forth hereafter violate 42 U.S.C.A. Section 20003.

6. Jurisdiction lies in this Court pursuant to 28 U.S.C.A. Section 1331 and 28 U.S.C.A. Section 1343.

7. Venue lies in this judicial district because all actions alleged in this Complaint occurred within the physical boundaries of the District of Delaware.

8. On or about November, 2003, Rossell was at work at the Laurel branch of Bank when Bank customers Gillis and Morris, both of whom are black, deposited a check in the amount of $140,000.13, seeking no return of funds to themselves or either of them. The check was drawn on the Bank de Montreal (Canada).

9. Because Rossell had been advised an earlier NSF designation was done in error she, when requested, allowed a manual override to the electronic system of Bank to permit the deposit of the check into an account of Gillis and Morris, that account designated as Morris Home and Land Package (MHLP).

10. Rossell's actions in permitting their deposit treated Morris and Gillis the same as any ordinary customer of Bank would be treated under the circumstances then and there presented, without modification or change because of their race. Morris and Gillis also had other accounts in good standing with Bank.

11. Rossell did not notice, nor did the other personnel of Bank who also dealt with the aforesaid check deposit, that it was made to a different account of Morris and Gillis than the one for which it was deposited, namely Morris Development Group (MDG).

12. After the aforesaid deposit Gillis and Morris began writing checks on the account into which the monies were deposited, which presumably they would have done on any account into which the deposit went, which checks were cleared by other employees of Bank's using the one day clearing period which was customarily used by Bank.

13. On November 17, 2003, Gillis came to the Laurel branch requesting a wire transfer in the amount of $85,000.00 to Barclay's Bank PLC in London, England. On

November 18, 2003, a "hold" was placed on the applicable account, in the amount of $85,050.00, by the Laurel Branch.

14. The aforesaid "hold" was released so that an indefinite hold in the amount of $140,000.13 could be placed on the account on or about November 18, 2003, by other personnel at Bank.

15. On or about November 22, 2003, Gillis again sought the wire transfer, but on this occasion to Canada.

16. On this date the 30 day clearance period customarily required by Bank for a check drawn on a "foreign bank", a bank other than Bank itself, had not yet expired which fact was known to higher level Bank employees, including employees at Bank's Georgetown, Delaware, location, and Bank's Corporate location in Rehoboth, Delaware.

17. Officials at Bank other than Rossell, and believed to be of higher authority than Rossell, lifted the aforesaid "hold" sometime thereafter, permitting the funds held by Bank to be released.

18. Bank subsequently determined the deposited check had been forged, and initially believed Gillis and Morris were part of the effort to defraud Bank, and some in Bank viewed their race as indicating likely involvement in the fraud.

19. Rossell defended Gillis and Morris as not being involved, which Rossell believes caused anger in those who thought because of their race Gillis and Morris were likely involved. It was ultimately determined Gillis and Morris were, like Bank, victims of a forgery scheme from abroad.

20. A number of Bank personnel, including Comptroller Wayne Dukes, Head Auditor Scott Wallsmith, and Internal Auditor Deborah Maull thereafter purportedly

investigated the forgery events on behalf of the Board of Directors of Bank, and Bank President Harold Slatcher, and thereafter made a report to the Board of Directors and Slatcher.

21. The Board of Directors and Slatcher then caused or carried out the termination of Rossell's employment on or about January 13, 2004.

22. The actions of the Board of Directors and Slatcher were in retaliation for Rossell's treating black customers Gillis and Morris in the same manner as she would treat other Bank customers in the same circumstances, rather than with heightened suspicion because they were black, and believing in their innocence regarding the fraud upon Bank.

23. On information and belief, none of those persons of higher authority who revoked the "hold", which intervening act caused most of the financial loss suffered by Bank, received any discipline from The Board of Directors or Slatcher.

24. The purported reason for the termination of Rossell was her involvement in the early processing of the accounts of Gillis and Morris including the deposit of $140,000.13, without having taken greater precautions, which bank alleged was the cause of its financial loss.

25. Bank's actions essentially were based on the desire that Rossell discriminate against black customers as part of her employment, in the handling of their accounts, and viewing them with heightened suspicion, and Bank retaliated against her when she evidenced objections to that employment practice by refusing to engage in treating Gillis and Morris differently than other Bank customers because of their race.

26. Rossell, after termination, followed administrative procedures applicable to claims of retaliation for objection to discriminatory employment practices and was sent a "Right to Sue" letter by the Equal Employment Opportunity Commission on January 10, 2005.

## COUNT I

27. Paragraphs 1 through 26 are here realleged and set forth at length.

28. Bank's termination of Rossell's employment, despite her prior good performance of her job duties and requirements, because of her objection to and refusal to engage in an employment practice of heightened suspicion of, and different treatment of, black Bank customers because of their race is a violation of 42 U.S.C.A. Section 20003.

29. In terminating Rossell, Bank and Slatcher treated Rossell differently than other Bank officials and employees who later handled the accounts of Morris and Gills, despite the fact that later handling of the accounts caused most of the actual monetary loss suffered by the bank, and gave a pretextural reason for the termination of Rossell.

WHEREFORE Rossell requests that this Honorable Court grant judgment in her favor in an amount adequate to compensate her for financial loss, in the form of front pay and back pay, compensatory damages, court costs, counsel fees, and such other and further relief as the Court may deem legally permissible.

BROWN, SHIELS, BEAUREGARD & CHASANOV

BY: _____
ROY S. SHIELS, ESQUIRE
108 E. WATER STREET
P.O. DRAWER F
DOVER, DELAWARE 19903
734-4766   ID#346
ATTORNEY FOR PLAINTIFF

4/4/05

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KATHY S. ROSSELL, | : | C.A. No.: |
| Plaintiff, | : | |
| vi. | : | AFFIDAVIT |
| COUNTY BANK, a Banking Institution of the State of Delaware. | : | |
| Defendant. | : | |

STATE OF DELAWARE )
                            )SS
COUNTY OF KENT   )

BE IT REMEMBERED, that on this 30 day of March 2005, personally appeared before me, the subscriber, a Notary Public for the State and County aforesaid, Kathy Rossell known to me personally to be such and she did depose and say the statements set forth in the foregoing Complaint are true and correct to the best of her knowledge and belief.

*Kathy Rossell*

SWORN TO AND SUBSCRIBED before me the year and day aforesaid as witness my hand and seal of office.

*Judy A. Harris*
NOTARY PUBLIC

JUDY A. HARRIS
NOTARY PUBLIC
STATE OF DELAWARE
MY COMMISSION EXP. 7-7-2005