IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **KATHY ROSSELL,** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 05-195 (SLR) |
| : | |
| **COUNTY BANK,** a bank organized : | |
| under the laws of the State of Delaware, : | |
| : | |
| Defendant. : | |

### DEFENDANT COUNTY BANK'S OPENING BRIEF
### IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS

 

                                                 **DUANE MORRIS LLP**
                                                 Daniel V. Folt (Bar I.D. No. 3143)
                                                 Gary W. Lipkin (Bar I.D. No. 4044)
                                                 1100 N. Market St., Suite 1200
                                                 Wilmington, DE 19801
                                                 302.657.4927
Dated: June 2, 2005                          Attorneys for Defendant County Bank

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

NATURE AND STAGE OF PROCEEDINGS .......................................................................... 3

SUMMARY OF ARGUMENT ................................................................................................... 4

STATEMENT OF FACTS .......................................................................................................... 5

ARGUMENT ................................................................................................................................ 8

I.    STANDARD OF REVIEW ............................................................................................. 8

II.   OPPOSING DISCRIMINATION AGAINST NON-EMPLOYEES IS NOT A PROTECTED ACTIVITY UNDER TITLE VII ........................................................... 8

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE**

*Baker v. Wilmington Trust Co.,*
    320 F. Supp. 2d 196 (D. Del. 2004)................................................................2, 4, 8, 12, 13

*Hamilton v. Civgenics,*
    2005 WL 418023 (D. Del. Feb. 22, 2005)..................................................................8

*Hamner v. St. Vincent Hospital and Health Care Center, Inc.,*
    224 F.3d 701 (7th Cir. 2000)................................................................................11, 12

*Labonia v. Doran Assocs., LLC,*
    2004 WL 1921005 (D. Conn. Aug. 25, 2004)..........................................................4, 12

*Martin v. The Kroeger Co.,*
    65 F. Supp. 2d 516 (S.D. Tex. 1999)........................................................................4, 12

*McMenemy v. City of Rochester,*
    241 F.3d 279 (2nd Cir. 2001)...................................................................................2, 4, 10

*Moore v. Total Sleep Diagnostics of Kansas, Inc.,*
    2001 WL 789231 (D. Kan. June 29, 2001)..............................................................4, 11

*Moyo v. Gomez,*
    40 F.3d 982 (9th Cir. 1994).....................................................................................11, 12

*Silver v. KCA, Inc.,*
    586 F.2d 138 (9th Cir. 1978)...................................................................................2, 4, 10

*Taneus v. Brookhaven Memorial Hospital Medical Center,*
    99 F. Supp. 2d 262 (E.D.N.Y. 2000)........................................................................4, 12

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,*
    140 F.3d 478 (3d Cir. 1998).....................................................................................8

*Williams v. Nat'l American Postal Workers Union,*
    2005 WL 977858 (D. Del. Apr. 27, 2005)................................................................8

*Wimmer v. Suffolk County Police Department,*
    176 F.3d 125 (2nd Cir. 1999)...................................................................................2, 4, 9, 10, 12

**STATE CASES**

*E.I. DuPont de Nemours v. Pressman,*
    679 A. 2d 436 (Del. 1996) .................................................................................................7

**STATUTES AND OTHER AUTHORITIES**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 ........................................ *in passim*

Federal Rule of Civil Procedure 12 ...............................................................................2, 3, 5, 8

45A AM. JUR.2D JOB DISCRIMINATION § 230 (May 2004) .............................................................11

## PRELIMINARY STATEMENT

In November 2003, Defendant County Bank sustained a major financial loss resulting from a fraudulent scheme directed against the bank by foreign parties which should have been but was not detected by two employees involved in the source transaction. One of those two employees was plaintiff Kathy Rossell, and she was terminated following an internal investigation into the incident solely because senior officers of the bank determined that she did not follow established training, policies or procedure. Although other employees made mistakes which contributed to the financial loss, County Bank's investigation established that Kathy Rossell was principally responsible because no financial loss would have occurred but for her failure to follow established policies and procedures that had been specifically put in place to prevent such losses.

The fraud perpetrated against County Bank was initiated by unidentified criminal parties who directed the scheme from Africa. Distilled to its essence, the fraud amounted to a recently developed variation of the so-called "Nigerian money scam," whereby an innocent bank customer is duped into depositing a foreign check into their bank account, and then funds are withdrawn from the account before the foreign check is presented to the host bank and identified as a forgery. The fundamental prerequisites of the scheme – *i.e.*, taking advantage of the delay in time between when a check is deposited and clears the source bank – are well known to County Bank. Although specific procedures and policies had been put in place to prevent County Bank from being victimized by such schemes, those policies and procedures were simply not followed here. Kathy Rossell was fired for that reason and, tellingly, never once complained about any form of discrimination until over one month after her termination.

However fair or harsh the circumstances of Rossell's termination may have been, those facts ultimately prove to be totally irrelevant to the determination of this purely legal motion. The reason the factual circumstances surrounding Rossell's termination are irrelevant is because under prevailing federal case law, Kathy Rossell <u>did not engage in any protected activity</u> under Title VII. That is, according to the very allegations she made in her Complaint, Rossell cannot establish a *prima facie* case of retaliation because <u>she did not oppose any unlawful employment practice</u>. That argument provides the sole legal basis for the dismissal advanced by this motion and the success or failure of this motion necessarily must turn upon the Court's evaluation of analogous federal cases that provide what appears to be a very clear answer to that single and discrete legal question.

In other words, simply put, Kathy Rossell is a non-minority who has alleged retaliatory termination as opposed to discriminatory termination, claiming she was discharged because she did not oppose County Bank's allegedly racially discriminatory practices. Assuming solely for purposes of argument – that which has been alleged but is completely untrue – that Plaintiff was terminated for opposing racial profiling of <u>bank clients</u> – then her Complaint should be dismissed at the Rule 12 stage prior to any discovery for <u>lack of standing</u>. This is so because opposition to discrimination against <u>non-employees</u> is <u>not a protected activity under Title VII</u>. *See, e.g., Wimmer v. Suffolk County Police Department*, 176 F.3d 125 (2nd Cir. 1999); *McMenemy v. City of Rochester*, 241 F.3d 279 (2nd Cir. 2001); *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978); *Baker v. Wilmington Trust Co.*, 320 F. Supp. 2d 196 (D. Del. 2004). That is the majority view upheld by every federal court that we could find that has considered the issue, save for one anomalous decision from the Ninth Circuit that has never been followed. Should the Court adopt the majority view, this case should be dismissed with prejudice.

## NATURE AND STAGE OF PROCEEDINGS

After her termination, Rossell followed administrative procedures applicable to claims of retaliation for objection to discriminatory employment practices and filed a Title VII claim with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶ 26). The basis of Rossell's Title VII claim before the EEOC was the same as that found here, namely that County Bank discriminated against non-employees or otherwise retaliated against its employees for not doing so. No allegation is contained in the Complaint that County Bank committed any acts of discrimination against Rossell (who is white) or against any other County Bank employee.

Finding no basis to prosecute the claim, the EEOC issued a "Right to Sue" letter on January 10, 2005. (*Id.* at ¶ 26). Plaintiff filed her Complaint with the United States District Court for the District of Delaware on April 4, 2005. In lieu of answering, County Bank filed a motion to dismiss. This is defendant's opening brief in support of its Rule 12 motion.

## SUMMARY OF ARGUMENT

1. This retaliatory discrimination case should be dismissed with prejudice for lack of standing under Title VII because opposition to discrimination against <u>non-employees</u> is <u>not a protected activity under Title VII</u>. *See, e.g., Wimmer v. Suffolk County Police Department*, 176 F.3d 125 (2nd Cir. 1999); *McMenemy v. City of Rochester*, 241 F.3d 279 (2nd Cir. 2001); *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978); *Baker v. Wilmington Trust Co.*, 320 F. Supp. 2d 196 (D. Del. 2004); *Labonia v. Doran Assocs., LLC*, 2004 WL 1921005, at *11 (D. Conn. Aug. 25, 2004); *Moore v. Total Sleep Diagnostics of Kansas, Inc.*, 2001 WL 789231, at *3 (D. Kan. June 29, 2001); *Martin v. The Kroeger Co.*, 65 F. Supp. 2d 516, 557 (S.D. Tex. 1999); *Taneus v. Brookhaven Memorial Hospital Medical Center*, 99 F. Supp. 2d 262, 267 (E.D.N.Y. 2000).

## STATEMENT OF FACTS[1]

Plaintiff Kathy Rossell ("Rossell") was employed as a supervisor at the Laurel, Delaware branch of Defendant County Bank from early 2000 until January 13, 2004 when she was terminated. (Compl. ¶ 3). The impetus for Rossell's termination began on or around November 2003, when two bank customers, Gillis and Morris, who are both African-American, deposited a check in the amount of $140,000.13 into their business account entitled "Morris Home and Land Package," (*Id.* at ¶¶ 8, 9), an account that had numerous "not sufficient funds" ("NSF") designations to its credit causing it to be frequently overdrawn. The check was drawn on a foreign bank, the Bank de Montreal (Canada). (*Id.* at ¶ 8). Although the check was deposited in the Morris Home and Land Package account, the check was actually made payable to an as-yet *unopened* account for a business called the Morris Development Group. (*Id.* at ¶ 11). Rossell concedes that she failed to realize that the check was made payable to a different account than the one to which the funds were deposited. (*Id.* at ¶11).

Because the check was being deposited into an account that was overdrawn, an automatic hold on the funds was put in place. Despite the presence of numerous warning signs to any experienced bank teller, namely: (i) a <u>very large foreign check</u> was being deposited into an account with (ii) <u>numerous NSF designations</u>, that was (iii) made payable to a <u>totally different and *unopened* account</u>, Rossell, as supervisor, authorized a manual override on the automatic hold placed on the funds to permit the deposit. (*Id.* at ¶ 9).

---

[1] This Statement of (alleged) Facts is based upon the allegations contained in Plaintiffs' Complaint and those facts are assumed to be true only for the purposes of this Rule 12 motion.

Shortly thereafter, Gillis and Morris began writing checks on the account. (*Id.* at ¶ 12). On November 17, 2003, Gillis requested a wire transfer in the amount of $85,000.00 to Barclay's Bank PLC in London, England. (*Id.* at ¶ 13). On November 18, 2003, a "hold" was placed on the account in the amount of $85,050.00, (*id.*), which hold was subsequently lifted. (*Id.* at ¶ 17).

County Bank later determined that the check had been forged (*Id.* at ¶ 18) causing a substantial loss to the Bank, and an internal investigation was conducted into the forgery. (*Id.* at ¶ 20). Concluding that Rossell's actions were a primary cause of the loss, due to her failure to take greater precautions in her depositing of the check as per bank policy and procedures, Rossell was terminated on or about January 13, 2004. (*Id.* at ¶¶ 21, 24). No claim of discrimination or objection to any racially-motivated practice or policy had ever been made at this point.

However, according to the subsequently-filed Complaint, County Bank's true motive for firing Rossell was "in retaliation for Rossell's treating black customers Gillis and Morris in the same manner as she would treat other Bank customers in the same circumstances, rather than with heightened suspicion because they were black." (*Id.* at ¶ 22). "Bank's actions essentially were based on the desire that Rossell discriminate against black customers as part of her employment, in the handling of accounts, and viewing them with heightened suspicion, and Bank retaliated against her when she evidenced objections to that employment practice by refusing to engage in treating Gillis and Morris differently than other Bank customers because of their race." (*Id.* at ¶ 25). The Complaint contains no allegation that County Bank had <u>ever</u> communicated any such practice to its employees, nor does it contain any allegation that Rossell <u>ever</u> complained of any discriminatory practice at any time.

This last point must be underscored. It is undisputed that Kathy Rossell never articulated any complaint of discrimination prior to or immediately after her termination on January 13, 2004. Nor did she ever identify, let alone oppose, any practice or procedure she later claimed to be discriminatory. Instead, the first and only complaint Kathy Rossell ever made was communicated via letter by her attorney on February 24, 2004 more than one month after she was terminated and sought legal representation. In that letter, her counsel barely even articulated a complaint via the following one-sentence remark: "However, it also appears that part of this unwarranted action *may* be based on the fact the depositor was a minority business and Rossell and [a non-party co-worker] were faulted for having not assumed they would therefore be untrustworthy." That remark amounts to pure suspicion and no facts have ever been communicated or even alleged to corroborate it.[2] More to the point, the absence of prior complaint establishes this post-termination complaint for the fraud and legal artifice it is – an attempt by counsel to manufacture an actionable defense to an at-will termination where no real defense exists.

---

[2] Again, we stress the point that the facts alleged in the Complaint are really of no moment here because, not only does Kathy Rossell lack standing under Title VII, but, according to Delaware law, employees are generally deemed "employees at will," meaning that they can be terminated without cause, regardless of the employer's motive. *E.I. DuPont de Nemours v. Pressman*, 679 A. 2d 436, 437 (Del. 1996). Were this Court to decline to adopt the majority view – and reject those cases which provide that discrimination against a non-employee does not constitute a Title VII violation – then the facts still would unequivocally establish that Kathy Rossell, a non-minority bank teller who never voiced a complaint about anything until well over one month after she was terminated, was discharged for failing to follow established bank policy. Rossell's non-compliance with established policy and procedure, whether the product of willfulness or indolence, caused the bank to sustain a major financial loss. The original decision, and the subsequent ratifications, were race-neutral, and no good cause beyond the baldest assertion has even been alleged to support her Title VII claim.

# ARGUMENT

## I. STANDARD OF REVIEW

The standard of review governing motions to dismiss is well-established. "In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff." *Williams v. Nat'l American Postal Workers Union*, 2005 WL 977858, at *2 (D. Del. Apr. 27, 2005) (citing *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998)). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* "However, the court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Hamilton v. Civgenics*, 2005 WL 418023, at *2 (D. Del. Feb. 22, 2005) (internal quotations omitted).

## II. OPPOSING DISCRIMINATION AGAINST NON-EMPLOYEES IS NOT A PROTECTED ACTIVITY UNDER TITLE VII

"The anti-retaliation section of Title VII states that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter.'" *Baker v. Wilmington Trust Co.*, 320 F. Supp. 2d 196, 200 (D. Del. 2004) (citing 42 U.S.C. § 2000e-3(a)). "To establish a prima facie case of discriminatory retaliation under Title VII, a plaintiff must show '(1) that she engaged in a protected activity; (2) that the employer took adverse action against her; and (3) a causal link exists between the protected activity and the employer's adverse action.'" *Id.*

8

Kathy Rossell did not engage in a protected activity and has not established a prima facie case of retaliation because she did not oppose any unlawful employment practice. As pled in the Complaint, Kathy Rossell <u>never</u> complained of any alleged discriminatory policy or practice until long after she was terminated. Absent such complaint, County Bank could not possibly have acted in retaliation against an employee whose claim had never been made prior to the adverse action challenged. This simple but inescapable fact should prove sufficient to end all debate.

This Court, however, never need not even address the question of whether Rossell ever complained about any discriminatory practice, or whether the Complaint even makes such an allegation, which it does not. Assuming solely for argument purposes that which is completely untrue – that Kathy Rossell was terminated in retaliation for opposing policies favoring racial profiling of bank clients – their claim must still fail as a matter of law. This is so because, under the majority federal court view, <u>opposition to discrimination against non-employees is not protected activity under Title VII.</u> This distinction was first made by the Second Circuit in *Wimmer v. Suffolk County Police Department*, 176 F. 3d 125 (2nd Cir. 1999), when it held that the opposition clause did not protect a white police recruit who opposed police civil rights abuses against minority citizens. The Second Circuit concluded that, however reprehensible, those abuses simply were not "employment" practices forbidden by Title VII. *Id.* at 135-36. Although the permissibility of an action alleging retaliation for opposing discrimination by co-employees against non-employees was a question of first impression in the Second Circuit, the panel nevertheless held that the plaintiff "could not have reasonably believed that he was opposing an employment practice." *Id.*

9

This holding was revisited and confirmed in the case of *McMenemy v. City of Rochester*, 241 F. 3d 279 (2nd Cir. 2001). In *McMenemy*, a firefighter brought an action against the city and several employees for violation of his civil rights in failing to promote him. *Id.* at 281. A primary basis of McMenemy's claim was that he was not promoted in retaliation for his prior investigation of a supervisor's sexual harassment complaint. *Id.* at 282. The district court held, and the defendants argued on appeal, that *Wimmer* confines "protected activity" to opposition to the unlawful employment practices of the same employer that engaged in the retaliation. *Id.* at 283. According to that view, McMenemy's investigation of sexual harassment committed by his Union is not protected activity because the alleged retaliation was committed by the City rather than by the Union. *Id.* The Second Circuit rejected that argument and reversed in part, but in so doing underscored and upheld the bright-line rule set forth in *Wimmer*. *Id.*

Explaining *Wimmer*, the Second Circuit pointed to the early reasoning of *Silver v. KCA, Inc.*, 586 F. 2d 138, 141 (9th Cir. 1978), which stated that "not every act by an employee in opposition to . . . discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Id.* Further support for the rule was found in *Silver*, which noted that the "specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees." *Silver*, 586 F. 2d at 141. This led the Second Circuit to conclude that in *Wimmer*, as here, "it should have been plain to the plaintiff and to any other lay person that his complaint of retaliation for opposing discrimination by co-employees with respect to the general public was not a complaint about an employment practice." *McMenemy*, 241 F. 3d at 285.

Another case that is nearly dead-on-point is *Moore v. Total Sleep Diagnostics of Kansas, Inc.*, 2001 WL 789231, at *3 (D. Kan. June 29, 2001), where the plaintiff allegedly was subjected to retaliation for complaining about disparaging remarks made against non-employee African Americans by her supervisor. For reasons equally relevant here, the District Court granted defendants' motion to dismiss, holding: "In the case at hand, plaintiff has alleged in her complaint that 'derogatory comments were generally made about African American people.' Indeed, plaintiff acknowledges in her response brief that these comments were not directed at African American employees or co-workers. Even accepting as true all of plaintiff's well-pleaded facts, the court finds that plaintiff cannot state a claim for retaliation in these circumstances. Plaintiff has failed to allege any facts to support her contention that she had a reasonable belief that defendant's conduct was unlawful. Rather, plaintiff's complaint contains <u>no facts that defendant was engaged in an unlawful employment practice</u> and, as such, plaintiff could not have reasonably believed that she was opposing such an unlawful practice. Accordingly, plaintiff cannot state a claim for retaliation." *Id.* at *3 (D. Kan. June 29, 2001) (emphasis added).

Other courts and treatises are in accord.[3] "[A] complaint of retaliation for opposing discrimination by co-employees against nonemployees is not cognizable under Title VII." 45A AM. JUR. 2D JOB DISCRIMINATION § 230 (May 2004). "If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed

---

[3] The sole potential conflicting case is *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994), where the Ninth Circuit permitted a prison inmate to try to prove that he was fired in retaliation for protesting his employers' alleged policy of denying showers to African-American inmates. *Id.* at 985. The *Moyo* interpretation has not been adopted anywhere else, even though it has been advanced without success in countless cases, and we remain of the view that the Ninth Circuit stands alone in the minority with its novel interpretation.

11

an unlawful practice cannot be reasonable." *Hamner v. St. Vincent Hospital and Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) (citing *Wimmer*, 176 F.3d at 135). "Because Ms. Labonia's opposition . . . 'was not directed at an unlawful employment practice of [her] employer,' her claim of retaliation is not cognizable under Title VII." *Labonia v. Doran Assocs., LLC*, 2004 WL 1921005, at *11 (D. Conn. Aug. 25, 2004) (citations omitted). "Discriminatory comments or actions directed at persons who are not employees, such as independent contractors or subcontractors, do not fall within the scope of Title VII." *Martin v. The Kroeger Co.*, 65 F. Supp. 2d 516, 557 (S.D. Tex. 1999) (citing *Wimmer*, 176 F.3d at 135-36) (other citations omitted). "Similarly, the acts of discrimination opposed by the employee must be against a fellow employee or applicant for employment, not a private individual. As with a hostile work environment claim, the person against whom the discrimination or hostility is directed must be in an employment relationship with the employer." *Id.* (citing *Wimmer*, 176 F.3d at 135-36). *See also Taneus v. Brookhaven Memorial Hospital Medical Center*, 99 F. Supp. 2d 262, 267 (E.D.N.Y. 2000) (where Court dismissed plaintiff's retaliation claim holding "[i]n essence, she argued that the Hospital's infection control policy treated Haitian patients in a racially discriminatory manner. Her protest, which was not a complaint regarding treatment of employees, was not a statement made in opposition to an employment practice and cannot constitute protected activity within the meaning of Title VII.").[4]

---

[4] In *Baker v. Wilmington Trust Co*, 320 F. Supp. 2d 196 (D. Del. 2004), a factually analogous case, the plaintiffs were terminated for cashing checks for minority bank customers in violation of the bank's two-step deposit and check-issuance policy. *Id.* at 198. The plaintiffs argued that their termination was pretextual because they followed existing policy and because they were told – in their final meeting – that they should have known better when dealing with people who had names like "Nirali and Balaji." *Id.* at 199. Upon defendant's motion for summary judgment, the Delaware District Court rejected plaintiffs' Title VII claim and declined to adopt the minority view found in *Moyo* (see p.11, n. 3 *supra*), ultimately dismissing the case finding that there were not sufficient facts to support a claim of discrimination. Unlike numerous other courts, the *Baker* Court ultimately sidestepped the issue of whether, as a matter of
(Continued...)

## CONCLUSION

The Complaint contains absolutely no allegations that County Bank discriminated against any employee. Rather, the sole allegations presented here allege that County Bank discriminated against non-employees and then retaliated against Rossell for her alleged refusal to do so. While reprehensible, such conduct -- even if true -- cannot possibly form the basis of a legitimate Title VII claim, as the overwhelming majority of courts that have reviewed the issue have all held that discrimination against non-employees and subsequent retaliation for an employee's failure to similarly discriminate are simply not protected activities under Title VII. We therefore respectfully request that this Court rule as a matter of law and dismiss Plaintiff's Complaint in its entirety.

Dated: June 2, 2005                                    **DUANE MORRIS LLP**

/s/ Daniel V. Folt
Daniel V. Folt (Bar I.D. No. 3143)
Gary W. Lipkin (Bar I.D. No. 4044)
1100 N. Market St., Suite 1200
Wilmington, DE 19801
302.657.4927

Attorneys for Defendant County Bank

WLM\208578.1

---

(Continued...)

law, discrimination against non-employees could ever give rise to a Title VII claim, holding: "[e]ven if I were to adopt the Ninth Circuit's interpretation [the minority view] of 42 U.S.C. § 2000e-3(a) that 'requiring an employee to discriminate is itself an unlawful employment practice,' the Plaintiffs have not proffered any evidence from which a reasonable fact finder could conclude that [the bank] did, in fact, require its employees to discriminate against persons of Indian descent. The only evidence that Plaintiffs have submitted are a very limited number of offhand comments allegedly made by [bank] personnel." *Id.* at 201.

13