IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KATHY ROSSELL, | : | C.A. NO. 05-195 (SLR) |
| Plaintiff, | : | |
| V | | |
| COUNTY BANK, a bank organized<br>Under the laws of the State of Delaware | :<br>: | |
| Defendant. | : | |

PLAINTIFF'S ANSWER BRIEF IN OPPOSITION
TO DEFENDANT'S RULE 12(b)(6)
MOTION TO DISMISS


BROWN, SHIELS, BEAUREGARD & CHASANOV
ROY S. SHIELS, ESQUIRE
108 E. Water Street
P.O. Drawer F
Dover, Delaware 19903
302-734-4766   ID # 346
Attorney for Plaintiff

Dated: July 7, 2005

TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………  ii

NATURE AND STAGE OF PROCEEDINGS…………………………………………  1

SUMMARY OF ARGUMENT………………………………………………………….  2

STATEMENT OF FACTS………………………………………………………………  3

ARGUMENT
      1. STANDARD OF REVIEW…………………………………………………  5

      2. AN EMPLOYER'S PRACTICE OF HAVING EMPLOYEES
         DISCRIMINATE AGAINST CUSTOMERS IS AN EMPLOYMENT
        PRACTICE WITHIN THE MEANING OF 42 USC 2000e-3 AND
        OPPOSITION TO SAME IS A PROTECTED ACTIVITY……………………  5

      3. EVEN IF THIS COURT RULES AN EMPLOYER'S DISCRIMINATORY
        PRACTICE, WHEN DIRECTED TOWARD CUSTOMERS, CANNOT
        CONSTITUTE AN EMPLOYMENT PRACTICE TO WHICH OPPOSITION
        IS LEGALLY PROTECTED, EMPLOYEE MAY REASONABLY BELIEVE
        THAT PRACTICE IS UNLAWFUL AND BE PROTECTED……………....  9

CONCLUSION…………………………………………………………………………….  12

TABLE OF AUTHORITIES

CASES

Angelcastro v Prudential-Bache Securities, Inc., 764 F.2d 944, (3 Cir 1985)……… 5

Baker v Wilmington Trust Co., 320 F. Supp.2d 196, (D.Del 2004)………………... 6

Bartholomew v Fischel, 782 F.2d 1148, 1152 (3 Cir 1986)…………………………. 5

Burgess v Cahall, 88 F.Supp.2d 319 (D. Del. 2000)………………………………... 5

Charlton v Parmas Bd. Of Educ., 25 F.3d 194, 200 (3 Cir. 1994) …………………. 7

Deli Santi v CNA, Ins. Companies, 88 F.3d 192, (3d Cir 1996)……………………. 11

Howard v Board of Educ. Of Sycamore Community Civil School Dist. No. 427, 876 F. Supp. 959, 1973 (N.D. Ill. 1995)……………………………………………. 10

Jordan v Fox, Rothschild, O'Brien and Frankel, 20 F.3d 1250, (3 Cir 1994)……… 3

Maez v Mountain States Telephone and Telegraph, 54 F.3d 1488 (10 Cir 1995)…. 5

Manoharn v Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590,593 (2 Cir 1988)…………………………………………………………………………. 9

McMenemy v City of Rochester, 241 F.3d 279, (2d Cir.2001)……………………... 6

Moyo v Gomez, 40 F.3d 982, 985 (9 Cir 1994)……………………………………... 2

Pryor v National Collegiate Athletic Assn., 288 F.3d 548, (3 Cir 2002)…………… 3

Ray v Henderson, 207 F.3d 1234, 1240 (9 Cir. 2000)………………………………. 2

Regional Economic Community v City of Middletown, 294 F.3d 35, 45 (2 Cir. 2002).. 8

Rhoades v U.S., 750 F. Supp. 623, (D. Del 1996)………………………………….. 5

Rockefeller Center Properties, Inc. Secs. Litigation, 311 F.3d 198 (3 Cir 2002)………. 5

Rutherford v American Bank of Commerce, 565 F.2d 1162, (10 Cir. 1977)…………. 6


Trump Hotels & Casinos Resorts, Inc. v Mirage Resorts, Inc., 140 F.3d 478, 493 (Cir 1998)……………………………………………………………………….. 5

Wiggins v Phillip Morris, Inc., 853 F. Supp. 480, (D.C.D.C. 1994)…………………… 2

Wimmer v Suffolk County Police Dept., 176 F.3D 125, 136 (2d Cir. 1999)……..…… 6

Wrighten v Metropolitan Hospitals, Inc., 726 F.2d 1346 (9 Cir 1984)………………… 2

NATURE AND STAGE OF PROCEEDINGS

Plaintiff Kathy Rossell (hereafter "employee") was terminated from her employment with County Bank (hereafter "Bank") in January of 2004. Believing her termination was in retaliation for opposing an unlawful employment practice employee filed a charge jointly with the Equal Opportunity Commission (EEOC) and Delaware Department of Labor (DDOL). After an investigation, and mediation effort, by DDOL a "Right to Sue" letter was sent to employee on January 10, 2005. Employee filed her Complaint in this Court on April 4, 2005. Bank, in lieu of an Answer, filed a Motion to Dismiss pursuant to Federal Rule 12(b)(6), together with its Opening Brief in support of that Motion. This is employee's Answer Brief in opposition to Bank's Motion.

SUMMARY OF ARGUMENT

I. Plaintiff's claim of retaliation pursuant to 42 USC 2003e should not be dismissed pursuant to Federal Civil Rule 12(b)(6) because under Title VII an employee's practice of requiring, as a term or condition of employment, its employees to discriminate against customers based on the race of the customer is an unlawful employment practice under Title VII. Wrighten v Metropolitan Hospitals, Inc., 726 F.2d 1346, (9 Cir 1984); Moyo v Gomez, 40 F.3d 982, 985 (9 Cir 1994); Ray v Henderson, 207 F.3d 1234, 1240 (9 Cir. 2000).

II. Even if Plaintiff's view of employment practices made unlawful by Title VII is not upheld by this Court, her belief that she was retaliated against for opposing an unlawful employment practice may be reasonable, based on her showing of facts giving rise to that belief. Henderson, supra, Wiggins v Phillip Morris, Inc., 853 F. Supp. 480, (D.C.D.C. 1994).

STATEMENT OF FACTS

In sections of its Opening Brief titled "Preliminary Statement" and "Statement of Facts" Bank makes numerous allegations of fact (a Nigerian money scam, loss based only on failure to follow policies, identity of accounts into which monies were deposited, NSF designations, etc.) which are not set forth in the Complaint or any document attached to the Complaint. Given the status of this case at this time (Bank filing a Rule 12(b)(6) Motion to Dismiss in lieu of an Answer) those "facts", not within the Complaint or attached thereto, should not be considered by the Court in disposing of Bank's Motion. Jordan v Fox, Rothschild, O'Brien and Frankel, 20 F.3d 1250, (3 Cir 1994); Pryor v National Collegiate Athletic Assn., 288 F.3d 548, (3 Cir 2002).

What the Complaint indicates is that employee was working for Bank until terminated on or about January 13, 2004 (Para. 3). The specific events leading to that termination began in November of 2003 when two black customers (Gillis and Morris) made a deposit of a check in the amount of $140,000.13 from a Canadian bank, seeking no return of funds to themselves (Para 8). Having been advised an earlier NSF designation was in error employee treated these customers otherwise in good standing the same as others (para 10) in good standing by permitting, when requested, a manual override of the electronic system so the deposit could be made (para 9). When Gillis requested a wire transfer of $85,000.00 on November 17, 2003, a "hold" was placed on the account by the branch of Bank at which employee worked. This was later replaced by an indefinite "hold" in the amount of $140,000.13. (para 14) instituted by Bank itself.

On or about November 22, 2003 Gillis sought a wire transfer, to a different bank (para 15). Bank officers and managers were aware the customary 30 day clearance period had not yet

3

elapsed (para 16).  Most of the funds ultimately lost were still in Bank's custody and control. Bank officers and managers at this point, without any knowledge or participation by employer, decided to lift the "hold", thereby allowing that transfer of funds (para 17).  When Bank learned there was a fraud involving these funds it believed the customers, being black, were part of the fraud. (para 18)  Employee defended Gillis and Morris as not being involved, which turned out to be true, but which upset Bank Officers and Directors (para 19).

There was thereafter an internal "investigation" by Bank (para 20) and employee was terminated (para 21).  The reason for the termination was employee's failure to treat Gillis and Morris with heightened suspicion because they were black (para 22).  While employee was terminated those who actually later released the funds were not disciplined in any way (para 23). Employee was terminated because she did not discriminate against Morris and Gillis in the handling of their accounts as Bank desired (para 25).  Bank retaliated against employee for opposing Bank's employment practice of treating these black customers differently because of their race (para 25) by terminating her employment.

4

I. STANDARD OF REVIEW

A Motion pursuant to Federal Rule 12(b)(6) is not a procedure for resolving a contest between the parties about the facts or the substantive merits of Plaintiff's case <u>Rockefeller Center Properties, Inc. Secs. Litigation,</u> 311 F.3d 198 (3 Cir 2002); <u>Burgess v Cahall,</u> 88 F.Supp.2d 319 (D.C. Del. 2000). Further, there is a powerful presumption against rejecting pleadings for failure to state a claim. <u>Maez v Mountain States Telephone and Telegraph,</u> 54 F.3d 1488 (10 Cir 1995).

Accordingly the Court accepts as true the facts plead in the Complaint, and draws all inferences and resolves all doubts in favor of the pleader. <u>Rhoades v U.S.,</u> 750 F. Supp. 623, (D.C. Del 1996); <u>Bartholomew v Fischel,</u> 782 F.2d 1148, 1152 (3 Cir 1986). The Court will not dismiss the Complaint unless it is convinced the Plaintiff can prove no facts which would entitle her to relief. <u>Angelcastro v Prudential-Bache Securities, Inc.,</u> 764 F.2d 944, (3 Cir 1985); <u>Trump Hotels & Casinos Resorts, Inc. v Mirage Resorts, Inc.,</u> 140 F.3d 478, 493 (3 Cir 1998).

II  AN EMPLOYER'S PRACTICE OF HAVING EMPLOYEES DISCRIMINATE AGAINST CUSTOMERS IS AN EMPLOYMENT PRACTICE WITHIN THE MEANING OF 42 USCA 2003e AND OPPOSITION TO SAME IS A PROTECTED ACTIVITY

Employee claims to have been retaliated against by her employer for her opposition to a practice of the employer made an unlawful employment practice "by this title (42 USCS Sections 200e-2000e-17)" That alleged practice involved discrimination against black customers by the Bank, a practice which was opposed by employee. Bank's Motion to Dismiss is premised, in primary part on the proposition that such practice, even if it existed, is not an employment practice made unlawful by Title VII, even if there was an adverse action and a causal nexus between the adverse action and the discrimination opposed, because Title VII makes unlawful

5

only employment practices discriminating against employees.  The primary basis for that argument comes from cases in the Second Circuit.  Those cases are   <u>Wimmer v Suffolk County Police Dept., 176 F.3D 125, 136 (2d</u> Cir. 1999) and <u>McMenemy v City of Rochester,</u> 241 F.3d 279, (2d Cir.2001).

The other federal circuits have taken no position on this particular issue, except for the Ninth Circuit.  The Ninth Circuit has taken the opposite position, finding an employer's practice of compelling its employees to discriminate against non-employees, when opposed by an employee who is then retaliated against, by virtue of an adverse action by the employer,creates a cause of action under Title VII.  See <u>Wrighten v Metropolitan Hospitals, Inc.</u>, 726 F.2d 1346 (9 Cir 1984), a case of racial discrimination against patients by a hospital, opposed by a nurse, who was then terminated; <u>Moyo v Gomez,</u> 40 F.3d 982, 985 (9 Cir 1994), a case involving a claim of racial discrimination against prison inmates, opposed by a prison guard, who was then terminated.  The Court in <u>Moyo</u> noted that "requiring an employee to discriminate is itself an unlawful employment practice".

The other Circuit Courts, including the Third Circuit, have not directly addressed this issue so far as this writer is aware.  The issue was raised in <u>Baker v Wilmington Trust Co.,</u> 320 F. Supp.2d 196, (D.Del 2004).  However, that Court declined to decide the issue, dismissing the case for lack of sufficient factual evidence that Bank had, in fact, required its employees to discriminate against Indian customers.  (at p.201).  So far as this writer is aware no other case law in this Circuit directly deals with the issue here at hand, whether or not dispositive.

The issue then is what employment practices are made unlawful by Title VII.  It is axiomatic that 42 USCS 2000e-3 is remedial in nature and should be liberally construed rather

than read literally. Rutherford v American Bank of Commerce, 565 F.2d 1162, (10 Cir. 1977). On that basis courts have read 2003e to apply to former employees rather than only present employees. Charlton v Parmas Bd. Of Educ., 25 F.3d 194, 200 (3 Cir. 1994). The Charlton Court noted (see footnote 6) that the United States Supreme Court generally looked with favor on interpretations of remedial statues that were consistent with the purpose and objective of those statutes. It therefore held that a retaliation claim under 2003e "arises out of or is related to the employment relationship". Here the claimed retaliation "is related to the employment relationship" in that Bank's requirement or encouragement of discrimination against black customers was allegedly effectuated through its employees and but for employee having that status she would not have been retaliated against for opposition to the discriminatory practice.

The decision of the Wimmer Court to narrowly construe the language of 2003e to require that the unlawful employment practice opposed (there the unlawful employment practice alleged was that of hostile work atmosphere) must be directed against a person in an employment relationship with the employer was so literally applied as to eliminate a claim by an officer relating to a hostile work atmosphere in his own department because it was alleged to have been directed against Wimmer for opposition to racism directed at the public rather than directed against other officers. No language of the statute was referenced as requiring this result. Nor was there any reference to how the intent of Title VII was effectuated by this result.

Language which was referenced was the term "hostile work environment". If such a phrase actually existed in the statute it could be seen as an expression of congressional intent to limit the retaliation cause of action created by 2003e to causes of action involving coworkers. That phrase, however, has been judicially created to describe a form of discrimination

7

characterized not by a separate and distinct adverse action but by a pervasive atmosphere sufficient to alter conditions of employment. To accept Bank's interpretation that this Circuit allow use of that language to imply congressional intent to narrowly construe the language congress chose to use in 2003e is an offer which should be refused in the absence of proof of actual congressional intent of that nature. Rather, the Court should ask itself why Congress would mean to halt retaliation for opposing employer-racism against a coworker but allow retaliation to go unpunished in the case of an employer requiring its employee to exhibit racism against a customer. There is no reasonable basis to impute such an intent to Congress.

      Nor did the Court in <u>Wimmer</u> actually identify such an intent. Rather, it interpreted the phrase "hostile work environment" (the unlawful employment practice there complained of) to require an employment relationship between the person to whom the hostility was allegedly directed by the employer or persons working for the employer. Given the word "work" in that phrase that interpretation, in that limited context, has surface appeal. The <u>Wimmer</u> Court made no effort to say, and certainly didn't hold, that the same factors applied to any practice of the employer deemed to be unlawful because of Title VII. A few District Courts in other jurisdictions have thereafter, however, given a broader meaning to the language used in <u>Wimmer</u> without noting the specific form of unlawful practice there involved.

      The broad meaning Bank wishes this Court to give to the language of <u>Wimmer</u>, supra, was not accepted by the Court in <u>McMenemy,</u> supra. There the opposed discriminatory practice was carried out by the fire fighter's union, and the alleged retaliation was by the City of Rochester. The City alleged that <u>Wimmer</u> meant there was not a valid cause of action. The <u>McMenemy</u> court disagreed, noting that the language of 2003e-3(a) prohibited discrimination by

8

an employer against an employee who has opposed <u>any</u> practice made an unlawful employment practice by Title VIII, or participated in <u>any</u> manner in an investigation of same. (p.283). See also <u>Regional Economic Community v City of Middletown,</u> 294 F.3d 35, 45 (2 Cir. 2002). Certainly, Title VII makes discrimination by employees against employees because of their race unlawful, and an employer causing or permitting its employees, as part of the terms and conditions of their job, to discriminate against other persons because of their race depends just as much on the employment status of the employee or employees who act discriminatorily, and therefore is just as related to the employment context, and just as much an unlawful employment practice. Opposition to such an unlawful employment practice is a protected activity and opposition can be established by refusal to carry out or participate in the unlawful practice. <u>Moyo,</u> supra.

     Nor is it correct to assert that employee here seeks only to protect the rights of others. Rather, employee has a right not to be coerced or forced to herself discriminate based on race, simply because of where she works. She opposed the employment practice of permitting or requiring racial discrimination by Bank employees against black customers by declining to herself discriminate based on race. Because of that opposition her employment was terminated. There is a clear nexus between the discrimination practice she opposed, and her status as an employee. Recognition of that nexus serves the remedial intent of 2003e.

III. EVEN IF THIS COURT RULES AN EMPLOYER'S DISCRIMINATORY PRACTICE, WHEN DIRECTED TOWARD CUSTOMERS, CANNOT CONSTITUTE AN EMPLOYMENT PRACTICE TO WHICH OPPOSITION IS LEGALLY PROTECTED BY TITLE VII, EMPLOYEE MAY REASONABLY BELIEVE THAT PRACTICE IS UNLAWFUL AND BE PROTECTED.

     Even <u>Wimmer,</u> supra, recognized that a claimant alleging retaliation need not prove the

9

employment practice opposed was actually a violation of the law, but must only demonstrate that he or she had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. (Citing Manoharn v Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2 Cir. 1988). However, Wimmer, went on to hold that Wimmer's claim of retaliation was not cognizable under Title VII because his opposition was not directed at an unlawful employment practice of his employer, and where the unlawful employment practice was "hostile work atmosphere" this only included discrimination by employers against employees (p.135). Therefore, Wimmer, held, the employee's belief was, as a matter of law, not reasonable. That kind of circular reasoning, making the legal sufficiency of the claim a primary factor in determining reasonableness, creates an exception which swallows the rule.

  Assuming this Court would find that employer discrimination against customers was not a legally cognizable claim under Title VII the issue remains whether claimant could reasonably believe otherwise, and thus be legally protected. Employee claims that existing case law suggests that even where a claim is not legally cognizable (as opposed to claims involving factual error) there can be a reasonable belief by the plaintiff that discrimination is occurring, sufficient to prevent dismissal on the basis the claim as a matter of law cannot be reasonable. See Ray v Henderson, 207 F.3d 1234, 1240 (9 Cir. 2000);(citing Moyo, supra, as good law); Wiggins v Phillip Morris, Inc. 853 F. Supp 470 (D.C.DC 1994) (Section 1981 claim not legally cognizable); Howard v Board of Educ. Of Sycamore Community Civil School Dist. No. 427, 876 F. Supp. 959, 1973 (N. D. Ill. 1995).

  As a practical matter, the supposition that if a discrimination cause of action as alleged by a terminated employee is not legally cognizable the employee, as a matter of law, cannot have a

10

reasonable belief that discrimination has occurred is to deprive persons such as employee of protection from retaliation for having, in this case, the same view of a discriminatory practice as a Federal Circuit Court. Such a restrictive view of the retaliation cause of action is inconsistent with the basic remedial purpose of creating such a cause of action, and unduly restricts the effect of 2003e.

      This same restrictive interpretation exists in Bank's reference to the Complaint not pleading facts showing complaints by employee to Bank about its employment practice before her termination. In fact, such an allegation is not necessary as knowledge of the unlawful employment practice by Bank (the Complaint alleges its actions were willful and intentional) is sufficient. <u>Deli Santi v CNA, Ins. Companies</u>, 88 F.3d 192, (3d Cir 1996). The Court there held it sufficient that the employee was engaged in a protected activity known to the employer citing <u>Wrighten,</u> supra. While the issue of the legal sufficiency of a claim involving employee discrimination against third parties, as a violation of 2003e, was not there at issue it was apparently not such a glaring legal error as to have the Third Circuit not cite <u>Wrighten</u> on issues relating to retaliation.

CONCLUSION

Based on the foregoing authorities and arguments this Court is asked to hold that:

(1) Based on the well pled allegations of the Complaint, the Bank had an employment practice which compelled its employers, as terms and conditions of their employment, to treat black customers differently and less advantageously, than other customers.

(2) That employment practice was opposed by employee, who treated black customers Gillis and Morgan the same as other customers in good standing in regard to their accounts. When those customers, like Bank, were victimized by others Bank took adverse action against employee, terminating her employment while taking no action against others who did not oppose the unlawful employment practice but were more involved in the loss of Bank funds, indicating a pretext.

(3) Opposition to the Bank's employment practices of having its employees treat black customers more suspiciously was, according to the pleadings, the primary reason for Bank's termination of employee.

(4) Bank's taking adverse action against employee for her protected (by Title VII) opposition to its unlawful employment practice is a violation of 42 USC 2003e and therefore employee's complaint should not be dismissed for failing to state a cause of action for which relief could be granted.

(5) Even if the employment practice of Bank is not prohibited by Title VII employee should have the opportunity to show that her belief she had been retaliated against pursuant to 2003e was reasonable.

(6) Bank's Motion to Dismiss pursuant to Federal Rule 12(b)(6) should be denied.

Respectfully submitted,

BROWN, SHIELS, BEAUREGARD & CHASANOV

BY___/s/Roy S. Shiels_____
    ROY S. SHIELS, ESQUIRE
    108 E. WATER STREET
    P.O. DRAWER F
    DOVER, DELAWARE 19903
    302-734-4766   ID# 346
    Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KATHY ROSSELL, | : | C.A. NO. 05-195 (SLR) |
| Plaintiff, | : | |
| V | | |
| COUNTY BANK, a bank organized | : | |
| Under the laws of the State of Delaware | : | |
| Defendant. | : | |

CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2005, I electronically filed Plaintiff's Answer Brief in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss with the Clerk of the Court using ECF which will send notification of such filing(s) to the following: Daniel V. Folt, Esquire, 1100 N. Market Street, Suite 1200, Wilmington, Delaware 19801.

BROWN, SHIELS, BEAUREGARD & CHASANOV

BY___/s/Roy S. Shiels_____
  ROY S. SHIELS, ESQUIRE
  108 E. WATER STREET
  P.O. DRAWER F
  DOVER, DELAWARE 19903
  302-734-4766  ID# 346
  Attorney for Plaintiff

13