IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| KATHY ROSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-195-SLR |
| | ) | |
| COUNTY BANK, a bank organized under the law of the State of Delaware, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

Roy S. Shiels, Esquire, of Brown, Shiels, Beauregard and Chasanov, Dover, Delaware.  Counsel for Plaintiff Kathy Rossell

Daniel V. Folt, Esquire, Gary W. Lipkin, Esquire, of Duane Morris LLP, Wilmington, Delaware.  Counsel for Defendant County Bank.

**MEMORANDUM OPINION**

Dated: March 27, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Kathy Rossell, a former employee of defendant County Bank at one of its branch offices in Laurel, Delaware, files this 42 U.S.C. § 2000(e) action for discrimination under Title VII of the Civil Rights Act of 1964. Currently before this court is defendant's motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 2) The court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

According to plaintiff's complaint (D.I. 1), the events giving rise to this lawsuit include the following: In November 2003, plaintiff was working at the Laurel, Delaware branch of defendant bank. During that month, two African American customers, identified by plaintiff as "Gillis and Morris", deposited a check in the amount of $140,000.13, seeking no return of funds to themselves. The check was drawn on the Bank de Montreal (Canada). Gillis and Morris had several accounts with defendant. Some of these accounts were in good standing with defendant. The account into which the $140,000.13 check was deposited ("the account"), however, had had an earlier NSF designation.[1] Plaintiff claims that she was advised that the earlier NSF designation had been "done in error", thus allowing

---

[1] The court assumes that the term "NSF designation" refers to insufficient funds being available to cover checks/withdrawals written on an account.

her to manually override defendant's electronic system and deposit the check in the normal course of business.

On November 17, 2003, Gillis came to the Laurel branch requesting a wire transfer from the account in the amount of $85,000 to Barclay's Bank PLC in London, England. The following day, a "hold" was placed on the account by personnel at the Laurel branch in the amount of $85,050, which hold was broadened to cover $140,000.13. Sometime thereafter, the hold was lifted and the funds held by defendant were released.

Defendant subsequently determined that the deposited check had been forged. During the ensuing investigation, Gillis and Morris were suspected of being involved in an international scheme to defraud defendant. Although Gillis and Morris were ultimately vindicated, plaintiff's employment was terminated in January 2004 because of "her involvement in the early processing of the accounts of Gillis and Morris including the deposit of $140,000.13, without having taken great precautions, which [defendant] alleged was the cause of its financial loss." (D.I. 1, ¶ 24) In other words, plaintiff claims that defendant terminated her in retaliation for her failure to treat Gillis and Morris, not as customers in good standing, but with heightened suspicion for no other reason than their race.

### III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6),

the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle her to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

The anti-retaliation section of Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment because he has opposed any practice made an unlawful employment . . . practice by this subchapter." Lamb-Bowman v. Delaware State University, 152 F. Supp.2d 553, 559 (D. Del. 2001) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of discriminatory retaliation under Title VII, a plaintiff must show that: (1) she engaged in a protected activity; (2) the

3

employer took adverse action against her; and (3) a causal link exists between the protected activity and the employer's adverse action. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997); see also Baker v. Wilmington Trust Co., 320 F. Supp. 2d 196, 200 (D. Del. 2004). "Whether [p]laintiff has established a prima facie case of retaliation is a question of law for the court." Baker, 320 F. Supp. 2d at 200.

The issue of whether an employee's attempt to protect her employer's customers from discrimination by the employer is a "protected activity" has yet to be directly addressed by the Third Circuit. Nevertheless, other courts have concluded that an employee's efforts to shield her employer's customers from discrimination by the employer is not a "protected activity" under Title VII. The most relevant case in this area is Wimmer v. Suffolk County Police Dept., 176 F.3d 125 (2d Cir. 1999). In that case, a white police recruit complained of civil rights abuses against minority citizens by other police officers. The Second Circuit, although finding that the behavior was reprehensible, concluded that this was not a cognizable claim under Title VII because it was not related to an employment practice. Id. at 135-36.

The reasoning of the Wimmer decision has been reaffirmed in the holding of McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001), where a firefighter alleged he was not promoted

4

within his fire department because he had previously conducted an investigation for a firefighters' union regarding a sexual harassment complaint against another firefighter in the union. In its decision, the Second Circuit relied heavily on Silver v. KCA Inc., 586 F.2d 138, 141 (9th Cir. 1978), and stated that the purpose of Title VII is the protection of employees from discrimination by their employers, not as a general remedy for an employer's discrimination of private individuals who are not employees or job applicants. McMenemy, 241 F.3d at 283. The precedent set by these cases has been followed in numerous jurisdictions.[2]

Only one opinion has specifically addressed the issue in this jurisdiction. In Lamb-Bowman, the court was presented with a female basketball coach who claimed that women's athletics were receiving inferior treatment at the hands of the university, when

---

[2] See Taneus v. Brookhaven Memorial Hosp. Medical Center, 99 F. Supp.2d 262, 267 (E.D.N.Y. 2000); Labonia v. Doran Assoc. LLC, 2004 WL 1921005, at *11 (D. Conn. Aug. 25, 2004); Martin v. The Kroeger Co., 65 F. Supp.2d 516, 557 (S.D. Tex. 1999); see also Crowley v. Prince George's County, MD, 890 F.2d 683, 687 (4th Cir. 1989). But see Moyo v. Gomez, 40 F.3d 982 (9th Cir. 1994), where a guard at a correctional facility claimed he was fired from his job for protesting his employer's alleged discriminatory shower policy relating to African Americans. In its opinion, the court stated that "requiring an employee to discriminate is itself an unlawful employment practice". Moyo, 40 F.3d 982, 985. The court allowed the plaintiff to pursue the claim beyond summary judgment. Id. Although the reasoning in Moyo would suggest that plaintiff could claim discrimination based on her employer's alleged policy of forcing racial discrimination, few courts outside of the Ninth Circuit have followed that approach.

5

compared to men's athletics. When the coach was not appointed to a new contract, she brought suit for retaliation under Title VII. 152 F. Supp.2d at 559. The court drew a parallel between the ADEA anti-retaliation provisions and that of the Title VII provisions, stating: "The similarity between the statutory language of the ADEA and that of the anti-retaliation provision of Title VII indicates that a Title VII retaliation claim must be premised on opposition to a violation of Title VII." Id. at 560. In Lamb-Bowman, plaintiff's claim would have been properly brought under Title IX. Instead, by bringing her claim under Title VII, plaintiff had to prove that she engaged in a protected activity, which she was unable to do because the discrimination of which she complained was focused on non-employee students. Id. at 559-561.

Based on the pleadings, plaintiff's claim does not amount to a protected activity within the meaning of Title VII. Because plaintiff does not allege any discriminatory action taken against an employee, she cannot prevail on a Title VII claim. Therefore, defendant's motion to dismiss is granted as to plaintiff's Title VII claim.[3]

---

[3] See also Baker v. Wilmington Trust Co., where the court dismissed a claim of discriminatory retaliation based on plaintiff's failure to allege sufficient facts to state a claim. Plaintiff in that case claimed she was fired because she did not discriminate against customers of Indian descent. More specifically, plaintiff Baker alleged that: (1) when she was fired, she was "admonished" by an agent of her employer for not

6

## V. CONCLUSION

For the reasons stated above, the court grants defendant's motion to dismiss. An appropriate order shall issue.

---

being suspicious enough of customers of Indian descent; and (2) she had a conversation with a claims officer who said that "those damn Indians are always trying to get something for nothing." 320 F. Supp.2d at 202. The court reasoned that "offhand comments . . . and isolated incidents (unless extremely serious) will not amount to discrimination." Id. Although the court considered the statements offensive, it found Baker's claim to be lacking in substance for a Title VII claim because her allegations did not show that the defendant had forced her to discriminate. Id.
    In Baker, the allegations of retaliation failed because of the employee's inability to show more than mere offhand comments and isolated incidents. In the case at hand, beyond simply saying that she was terminated for not treating the customers with heightened suspicion because of their heritage, plaintiff has alleged little. Her allegations amount to far less than the claim alleged in Baker, which the court found did not amount to a valid Title VII retaliation claim.